**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Michael Slocum, Executor
of the Estate of Timothy M.
Donovan; and Cathy Carter,
as surviving spouse of
Timothy M. Donovan

    v.                                 Civil No. 11-cv-317-PB

Alexander Schleicher, GmbH &
Co. Segelflugzeugbau


**O R D E R**


    Michael Slocum and Cathy Carter have sued Alexander

Schleicher, GmbH & Co. Segelflugzeugbau ("Schleicher") for

injuries resulting from the death of Timothy Donovan.  Donovan

died while he was piloting a glider that was manufactured by

Schleicher.  The particular glider model that Donovan was

piloting is designated for sales purposes as an ASG 29 E, and is

also known as an ASW 27-18 E.  Plaintiffs assert claims for

wrongful death and survivor's damages based upon theories of

negligence, breach of warranty, and strict liability.  Before

the court is plaintiffs' motion to compel.  Schleicher objects.

For the reasons that follow, plaintiffs' motion to compel is

denied in part and otherwise held in abeyance.

    "Unless otherwise limited by court order, the scope of

discovery . . . [extends to] any nonprivileged matter that is

relevant to any party's claim or defense. . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  A party that is dissatisfied with an opponent's response to a request for discovery may "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).

Plaintiffs describe the milestones in the discovery process in the following way, and Schleicher does not appear to disagree.  Plaintiffs served discovery requests on May 12, 2012.  Approximately six weeks later, Schleicher produced 184 pages of documents, and withheld others, pending approval of a protective order.  The court entered a protective order on August 13.  In early September, plaintiffs contacted Schleicher to request a meet-and-confer and supplementation of Schleicher's production.  On September 21, Schleicher produced more documents.  About a week later, the parties conferred by telephone, and on October 22, Schleicher produced a third batch of documents.  Altogether, Schleicher produced 1,851 pages of documents in response to plaintiffs' requests for production.  Plaintiffs remained unsatisfied and told Schleicher they believed that they were entitled to additional documents, including: flight-testing documents, documents relating to safety issues, communications

with regulatory bodies, inspection documents, manufacturing logs, design memoranda or e-mails, and document-retention policies.  Schleicher's counsel did not respond.  This motion to compel followed.[1]

In their motion, plaintiffs argue that Schleicher has failed to properly respond to thirteen requests for production, see Fed. R. Civ. P. 34, directed toward the following general issues: (1) Schleicher's document-retention policies (request no. 2); (2) manufacture and quality control (requests 5 and 18); glider design (request no. 6); (3) flight testing (requests 13, 16, and 19); (4) modifications to Schleicher's glider designs (requests 25 and 27); and (5) field experience and safety (requests 28, 29, 30, and 31).  The court will follow plaintiffs' organizational scheme as it considers their thirteen requests for production, but begins with a definitional issue.

## Key Terms

There appears to be some confusion, misunderstanding, and/or disagreement surrounding several of the terms used in plaintiffs' requests for production.  Accordingly, the court begins by defining those terms.

---

[1] In it Sur-Reply, dated January 14, 2013, Schleicher indicated that it was then producing another forty pages of documents, bringing its total production to approximately 1,890 pages.  See doc. no. 62, at 3.

In their first set of requests for the production of documents, plaintiffs gave the following relevant instructions:

    8)   As used herein, the term[s] "THIS ACCIDENT" and "SUBJECT ACCIDENT" mean[ ] and refer[ ] to the June 29, 2009 ACCIDENT, or crash, involving the ASW 27-18 E glider A/K/A ASG 29 E, registration N129TD aircraft, in which Timothy Donovan died causing injury to Plaintiffs MICHAEL SLOCUM, Executor of the Estate of Timothy Donovan and CATHY CARTER, as surviving spouse of Timothy M. Donovan.

    9)   As used herein, the term "YOUR GLIDERS" means and refers to all Schleicher gliders and subparts used or designed to be operated for Schleicher.  This specifically includes, but is not limited to, the ASW 27-18 E glider A/K/A ASG 29 E ("SUBJECT GLIDER").

    10)  The term[s] "SUBJECT PRODUCT" or "YOUR PRODUCT" refer[ ] to all ASW 27-18 E glider[s] A/K/A ASG 29 E series aircraft and all ASG 29 series aircraft.

Def.'s Mem. of Law, Ex. 1 (doc. no. 55-2), at 3 (italics omitted).

From the foregoing, the court discerns a hierarchy of terms, running from the most inclusive (your gliders) to the least inclusive (subject glider).  "Your gliders" refers to Schleicher's full line of gliders.  "Subject product" and "your product" each refer to the same two product lines: (1) the ASW 27-18 E glider, which is also known as the ASG 29 E; and (2) the ASG 29 glider.  With regard to its system of nomenclature, Schleicher has provided sworn testimony that "ASG 29 E . . . is the sales name for an ASW 27-18 E."  Def.'s Sur-Reply, Ex. A,

4

Kremer Decl. (doc. no. 62-1) ¶ 5.  Moreover, the Kremer declaration also establishes that "[t]he ASW 27-18 E model is not the same as the ASW 27 model," id. ¶ 6 (emphasis added), but is "a separate and distinct model glider from the ASW 27," id. ¶ 7.  Kremer also explains that "[t]he ASW-27 18 E [sic] is a 'variant' of an ASW 27," id. ¶ 8, because the ASW 27-18 E "derives from the ASW 27," id. ¶ 9.  Finally, while the record establishes that "ASG 29 E" and "ASW 27-18 E" are synonyms, the term "ASG 29," which appears in the second part of plaintiffs' definitions of "subject product" and "your product," does not have a readily ascertainable synonym.

The least inclusive term in plaintiffs' instructions, "subject glider," is susceptible of two reasonable constructions.  That term could refer to a category of gliders that is somewhat more limited than the category denoted by "subject product" and "your product."[2]  Or, it could denote the specific glider Donovan was piloting at the time of his death. Finally, the excerpt from the request for production that Schleicher submitted in support of its objection to plaintiffs' motion to compel, which may or may not include all of

---

[2] Specifically, "subject product" and "your product" are defined to include all ASW 27-18 E a/k/a ASG 29 E gliders, along with all ASG 29 aircraft, while "subject glider" is limited to the ASW 27-18 E a/k/a ASG 29 E aircraft, omitting mention of the ASG 29.

plaintiffs' definitions, includes no definitions for the terms "glider," "aircraft," or "product."

In their motion to compel, plaintiffs appear to introduce a new term, stating that "[r]eferences to 'Glider' herein refer to both the ASG 29E and the ASW 27 model Schleicher gliders." Doc. no. 53, at 1 n.1.[3] Later in their memorandum, plaintiffs describe requests 5 and 18 as asking for "documents relating to production and quality control – i.e., manufacturing and inspection of the Glider." Pls.' Mem. of Law (doc. no. 53-1), at 7 (emphasis added). But, as propounded on Schleicher, neither of those requests says anything about "the glider." Rather, both ask for documents pertaining to "the subject glider." See id. at 8, 9.

The court can construe plaintiffs' conflation of the terms "glider" and "subject glider" in two different ways. The more benign interpretation would be sloppiness, inadvertence, or an honestly held but erroneous belief on plaintiffs' part that the definition of "subject glider" in their request for production

---

[3] Plaintiffs' memorandum of law in support of their motion to compel proposes a slightly different definition: "References to 'Glider' herein refer to both the ASG 29 and the ASW 27 model Schleicher gliders." Doc. no. 53-1, at 2, n.2. The difference between the two definitions is that the definition in the motion to compel includes the ASW 27 and the ASG 29 E, while the definition in the memorandum of law includes the ASW 27 and the ASG 29. As plaintiffs point out, the letter "E" denotes a model that includes a motor. See Pls.' Mot. to Compel (doc. no. 53), at 1 n.1.

actually included the ASW 27.  The more sinister interpretation would be that plaintiffs were attempting, in their motion to compel, to stretch the definition of "subject glider" to include the ASW 27.

Schleicher follows the second path, and accuses plaintiffs of attempting to compel the production of more material than was covered by their requests for production, i.e., documents pertaining to its ASW 27 glider.  Plaintiffs counter, somewhat confusingly, by arguing that Schleicher "does not have support for separating the ASG 29 E and ASW 27-18 E gliders for purposes of discovery."  Pls.' Reply (doc. no. 59), at 1.  Schleicher closes the argument by pointing out, correctly it would seem, that it never claimed to distinguish between the ASG 29 E and the ASW 27-18 E which are, in its view, one and the same.

There is considerable confusion surrounding the definitions of the relevant terms in this case.  Some of that confusion arises from the underlying nomenclature, but that is largely cleared up by the Kremer declaration.  Additional confusion has been generated by plaintiffs' loose use of terminology in its memorandum of law, instances of which include both its introduction of the term "glider" and its conflation of that term with the defined term "subject glider."  If, indeed, plaintiffs were attempting to redefine the term "subject

glider," and make that term broader than it was defined to be in their instructions by adding the ASW 27 model, then Schleicher would have every right to be miffed.  The court will give plaintiffs the benefit of the doubt and presume that rather than trying to enlarge the definition of "subject glider" to include a model that was nowhere mentioned in their instructions, they intended to press for no more than what they asked for initially, which was documentation pertaining to the "subject glider" under the definition of that term that they provided in their request for production.

That leaves one issue for resolution, the proper definition of "subject glider."  As noted above, plaintiffs' definition of that term may reasonably be read as referring either to a line of gliders, i.e., Schleicher's ASW 27-18 E/ASG 29 E model, or to one particular glider, i.e., Donovan's own ASW 27-18 E/ASG 29 E. There are several good reasons to employ the latter of those two definitions rather than the former.

First, the definitions of "your gliders," "subject product," and "your product" all use the word "all," which clearly signals that those terms were intended to designate categories of gliders.  The reference to "subject glider" in paragraph 9 of plaintiffs' request for production, however, does not use the word "all," but, rather uses the word "the," which

suggests that the term was intended to apply to a specific glider.  Indeed, in paragraph 8, in which plaintiffs clearly intended to refer to a single glider, they used the word "the."[4] Moreover, several of plaintiffs' requests for production make much more sense if "subject glider" is defined as Donovan's glider rather than Schleicher's line of ASW 27-18 E/ASG 29 E gliders.  For example, request no. 5 asks for documents disclosing the date of manufacture of the subject glider.  An individual glider would have a date of manufacture; an entire line of gliders would not.  Similarly, request no. 18 asks for documents identifying persons who performed work, testing, or repair on the subject glider.  It does not seem reasonable to understand that request as seeking information about every person who ever worked on any ASW 27-18 E/ASG 29 E glider that Schleicher ever produced.  Based upon the foregoing, in the balance of this order, the court construes the term "subject glider" as referring to the particular glider that Donovan was

---

[4] To be sure, a comparison of paragraphs 8 and 9 could be seen as cutting both ways.  Each paragraph uses the word "the," but paragraph 8 further specifies the glider to which it refers by including its registration number, while paragraph 9 does not include a registration number.  Still, the paragraph 9 reference to "the" glider, sandwiched between two references to "all" gliders suggests that the word "the" was used intentionally in the last sentence of paragraph 9, and that the absence of a registration number from that paragraph resulted from an inadvertent omission.

piloting at the time of his death rather than Schleicher's full line of ASW 27-18 E/ASG 29 E gliders.

### Request No. 2

In request no. 2, plaintiffs asked Schleicher to produce the following:

> All DOCUMENTS, which include, refer, relate[ ] to, or regard[ ] YOUR document retention and data storage, including, but not limited to, service difficulty reports, procedure and policy manuals, memorandum and instructions.  Please include YOUR policy for maintaining, organizing and reviewing said documents.

Pls.' Mem. of Law (doc. no. 53-1), at 7.

Plaintiffs say Schleicher has produced nothing in response to request no. 2.  Schleicher retorts:

> Schleicher has a two-year document retention policy that had been reduced to writing.  A diligent search has been made to locate a copy of that policy and that search continues.  If it is located, it will be promptly produced.

Def.'s Mem. of Law (doc. no. 55-1), at 5.

Not only does Schleicher assert that it is unable to produce its document-retention policy because it cannot locate a copy of it, Schleicher also says that it has produced all the documents in its possession that are responsive to any of plaintiffs' remaining twelve requests for production.  That is, Schleicher denies the existence of any responsive documents other than the missing document-retention policy.  Plaintiffs

call Schleicher's denial "unsupported and not credible."  Pls.'

Reply (doc. no. 59), at 3.  In so arguing, plaintiffs point out

that Schleicher did not support its objection with an affidavit

vouching for its document search, and they attack the

credibility of Schleicher's claim by producing the affidavit of

a licensed aircraft mechanic and inspector who, after reviewing

all of Schleicher's discovery, said, among other things:

> In order for an airplane of any type to achieve
> certification and be issued a Type Certificate Data
> Sheet . . . the applicant will have produced enough
> documents and correspondence with the Certification
> Authority to fill a small FedEx delivery van and I
> have not seen documents that would come close to that
> volume.

Pls.' Reply, Ex. C, Doss Aff. (doc. no. 59-3) ¶ 7.  While the

Doss affidavit specifically addresses material responsive to

request no. 13, it also supports plaintiffs' broader position,

i.e., their general disbelief that Schleicher possesses only

about 1,900 pages of responsive documents.

Schleicher, in turn, has produced a declaration in which

its executive director stated:

> Schleicher has made a thorough and good-faith search
> of its files for documents responsive to Plaintiff's
> document requests and, to its knowledge, has produced
> all responsive documents within its possession,
> custody, and control.

> Schleicher continues to be on the lookout for
> additional responsive documents and will produce any
> further responsive documents it discovers.

> Indeed, Schleicher is producing to Plaintiffs[ ]
> additional responsive documents that were
> inadvertently missed during prior searches.
>
> To Schleicher's knowledge, no documents that would
> have been responsive to Plaintiffs' requests have been
> discarded or destroyed since the date Schleicher
> learned of the subject accident.

Def.'s Sur-Reply, Ex. A, Kremer Decl. (doc. no. 62-1), ¶¶ 15-18.

Based on Kremer's sworn statement that Schleicher has produced everything in its possession that is responsive to plaintiffs' document requests, it is difficult to see what, precisely, the court could order Schleicher to do if it were to grant plaintiffs' motion to compel further production with respect to request no. 2.  If Schleicher had objected to the production of a document it acknowledged possessing, or had asserted a privilege, then there would be a legal dispute for the court to resolve.  But where, as here, the party targeted by a motion to compel says there are no documents to produce, there is nothing for the court to compel.  Accordingly, as to request no. 2, plaintiffs' motion to compel is denied.

### Requests 5 & 18

Requests 5 and 18 were directed toward the manufacture of Donovan's glider and associated quality control measures. Plaintiffs' memorandum of law characterizes those requests as pertaining to "the Glider," but the request itself speaks

exclusively of "the subject glider," which, for the purposes of
discovery in this case, is Donovan's glider.

In request no. 5, plaintiffs asked Schleicher to produce
the following:

> All DOCUMENTS, which refer [to], relate to or regard
> the design, assembly, manufacture, production,
> fabrication, construction of the SUBJECT GLIDER,
> including the date of manufacture, design history, and
> the source of all parts used in manufacturing and or
> assembly of the SUBJECT GLIDER.

Pls.' Mem. of Law (doc. no. 53-1), at 8.  In response to that
request, and each of the other requests discussed below,
Schleicher interposed a long list of objections.[5]  Having
registered its objections, Schleicher initially produced fifty-
three pages of documents in response to request no. 5, and it
promised additional production once a protective order was in
place.  See id.

In request no. 18, plaintiffs asked Schleicher to produce
the following:

> [A]ll DOCUMENTS that IDENTIFY all PERSONS who
> designed, manufactured, maintained, inspected,
> repaired, supervised and/or performed any type of
> work, testing or repair on the SUBJECT GLIDER and it's
> component parts.

---

[5] Several of those objections were based on privileges.  In
a letter dated September 27, 2012, Schleicher's counsel told
plaintiffs' counsel that, at that point, Schleicher had not
withheld any documents based upon the assertion of a privilege.
See Pls.' Mem. of Law, Ex. I (doc. no. 53-12), at 3.

Pls.' Mem. of Law (doc. no. 53-1), at 9.  Schleicher initially responded to request no. 18 by producing fifty-one of the fifty-three pages it produced in response to request no. 5 plus twelve more pages, and it promised additional production once a protective order was in place.  See id.

Plaintiffs argue that Schleicher's document production in response to requests 5 and 18 is incomplete because Schleicher has produced neither inspection documents nor any internal communications, and produced no additional documents responsive to these requests after the court entered its protective order. Plaintiffs further characterize Schleicher's production as consisting largely of documents that were already in their possession.  They now seek documents such as daily production logs, checklists, inspection sign-off sheets, other workshop and factory documents, and communications among Schleicher engineers via e-mail or otherwise.  Schleicher responds by: (1) renewing some of its objections; (2) pointing out twelve pages of additional documents it produced after entry of the protective order, see Def.'s Mem. of Law, Exs. 4 and 5 (doc. nos. 55-5 & 55-6); and (3) claiming that, as a result of following its document-retention policy, no other responsive documents exist.

The interplay between Schleicher's first and third arguments creates a conundrum.  Standing alone, Kremer's sworn

14

declaration that Schleicher has produced all responsive
documents that still exist would probably warrant denial of
plaintiffs' motion as it relates to requests 5 and 18.  But,
before saying that it has produced all extant responsive
documents, Schleicher also raised the following objection:

> Schleicher renews its objection that these
> Requests are overly broad, unduly burdensome, and seek
> information that is not relevant and/or reasonably
> calculated to lead to the discovery of admissible
> evidence.  For example, both Requests are unlimited in
> time and encompass all of the component parts of the
> subject glider, notwithstanding the fact that many
> parts of the glider have no relevance whatsoever to
> Plaintiffs' claims.  In addition, Request No. [18]
> references any type of work at all on the subject
> glider, even though some types of work (e.g., simply
> preparing the completed glider for shipment) have no
> relevance to Plaintiffs' claims.

Def.'s Mem. of Law (doc. no. 55-1), at 6.

Here is the problem.  Because Schleicher renewed its
objections to requests 5 and 18, but later said that it "has
produced all responsive documentation within its possession,
custody, or control," id. at 7, it is unclear whether the
"responsive documentation" Schleicher says it has produced is
all the documentation it deemed responsive and discoverable, or
all the documentation that plaintiffs asked for.  For example,
with regard to documents concerning component parts, the court
cannot tell whether: (1) Schleicher is withholding documents
that, in its view, pertain to component parts it deems

15

irrelevant to plaintiffs' claims; or (2) it has produced all
such documents in its possession, notwithstanding its
objections.  If Schleicher has withheld documents, then there is
an issue for the court to resolve.  If, on the other hand,
Schleicher is not withholding any documents in reliance on its
objections, then there is nothing left for the court to decide.

Based upon the foregoing, the court is not in a position to
either grant or deny plaintiffs' motion to compel as it relates
to requests 5 and 18.  Before this issue can be resolved, it is
necessary to know whether Schleicher is withholding any
documents based upon its objections to those requests.
Accordingly, Schneider is directed to respond to this order by
informing the court whether it has withheld any documents in
reliance upon one or more of its objections.  If it has withheld
documents, the court shall schedule oral argument or, if
necessary, an evidentiary hearing.  If Schleicher has not
withheld any documents based on its objections to requests 5 and
18, then there is no need or oral argument or a hearing, and
Schleicher is entitled to an order denying plaintiffs' motion to
compel as it relates to requests 5 and 18.

### Request No. 6

In request no. 6, plaintiffs asked Schleicher to produce
the following:

> All DOCUMENTS, with respect to the design and
> production history of the SUBJECT GLIDER, including,
> documents that identify: I) a complete history of the
> design and production of the SUBJECT PRODUCT, 2) all
> changes, modifications, and developments in the design
> and production of SUBJECT PRODUCT, 3) the identity of
> all persons or entities involved in the original
> design of the SUBJECT PRODUCT, or any subsequent
> modifications or re-designs of said model. 4) all
> documents and engineering diagrams in regard to the
> SUBJECT PRODUCT.

Pls.' Mem. of Law (doc. no. 53-1), at 11-12.  In response to

that request, Schleicher initially produced the same fifty-three

pages of documents it produced in response to request no. 5

(including fifty-one pages it produced in response to both

request no. 5 and request no. 18), and it promised additional

production once a protective order was in place.  See id. at 12.

Plaintiffs' memorandum of law characterizes request no. 6

as seeking documents "relating to the Glider and the predecessor

glider that it was modeled upon."[6]  Pls.' Mem. of Law (doc. no.

51-3), at 11.  In other words, plaintiffs seem to believe that

they requested documentation concerning "both the ASG 29 and the

ASW 27 model Schleicher gliders," id. at 2 n.2.  But, the most

inclusive term used in the request itself, "subject product,"

extends only so far as to include "all ASW 27-18 E glider[s]

---

[6] Given plaintiffs attempt to define the term "glider" to
include the ASW 27, which Schleicher acknowledges to be a
predecessor of the ASW 27-18 E, plaintiffs' reference to the
predecessor of "the Glider" is especially confusing.

A/K/A ASG 29 E series aircraft and all ASG 29 series aircraft."
Def.'s Mem. of Law, Ex. 1 (doc. no. 55-2), at 3.  Thus, the
request does not encompass Schleicher's ASW 27 glider.[7]

That said, plaintiffs assert that in conversations with
Schleicher's counsel, they

> agreed to limit their immediate request to engineering
> documents, specifications, drawings, engineering e-
> mails, and related communications, relating to the
> design of the following parts: fuselage, spars, pins
> and bushings (including locking mechanisms), wings,
> flaps, elevator, aileron and rudder control systems,
> canopy, rudder, air brakes, engine and propeller
> assembly, weight and balance and spin recovery.

Pls.' Mem. of Law (doc. no. 53-1), at 11.  Plaintiffs concede
that Schleicher has produced design drawings, but claim that it
produced no engineering e-mails or other documents related to
the design of the subject product.  They call Schleicher's
production marginally responsive, and contend that it "must be
supplemented with written files from the designers relating to
the design-notes, e-mails, logs, reports, memoranda, failure
cause and analysis documents, etc., all of which are a normal

---

[7] As the court has already explained, the record includes
reliable evidence that the terms "ASW 27-18 E" and "ASG 29 E"
are synonymous.  There is some evidence hinting at a similar
identity of meaning between the terms "ASW 27" and "ASG 29."
See, e.g., Pls.' Reply, Ex. A (doc. no. 59-1), which would mean
that a request for documents relating to the ASG 29 would also
be a request for documents relating to the ASW 27.  But, the
record does not include evidence on that equivalence that the
court could accept as conclusive, and, in any event, plaintiffs
do not appear to argue that "AASW 27" and "ASG 29" are synonyms.

part of the design process." Id.  Schleicher responds by: (1)
renewing some of its objections;[8] (2) pointing out nine pages of
internal documents it produced in addition to the design
drawings, see Def.'s Mem. of Law, Ex. 6 (doc. no. 55-7); and (3)
claiming that, as a result of following its document-retention
policy, it possesses no other responsive documents.

As with requests 5 and 18, Schleicher's renewal of its
objections to the scope of request no. 6, coupled with its claim
to have produced all extant responsive documents leaves the
court unable to determine whether Schleicher has withheld any
documents which, in its view, are not subject to discovery due
to their irrelevance.  So, as with requests 5 and 18, Schleicher
is directed to inform the court whether it is withholding any

---

[8] Schleicher articulates its renewed objections in the
following way:

Schleicher renews its objection that, even as
limited by Plaintiffs, this Request is overly broad,
unduly burdensome, and seeks information that is not
relevant and/or reasonably calculated to lead to the
discovery of admissible evidence.  Plaintiffs' Request
is unlimited in time, and their long list of parts
essentially comprises the entire glider,
notwithstanding the fact that many parts of the glider
have no relevance to their claims.  For example,
Plaintiffs' list includes parts for the engine and
propeller assembly, despite the fact that the decedent
was not using the engine or propeller at the time of
the accident and there is no evidence or allegation
that the engine or propeller contributed in any way to
the subject accident.

Def.'s Mem. of Law (doc. no. 55-1), at 8.

documents identified in request no. 6 in reliance upon its objections to that request.

### Requests 13, 16 & 19

Requests 13, 16, and 19 were directed toward the flight testing of Donovan's glider.  Plaintiffs' memorandum of law characterizes those requests as pertaining to "the Glider," but the request itself speaks exclusively of "the subject glider," which is Donovan's ASW 27-18 E/ASG 29 E.  Thus, Schleicher's purported failure to produce flight-testing documents pertaining to the ASW 27 – which is a category of gliders, and one that does not include Donovan's glider – cannot be understood as a failure to respond to requests 13, 16, and 19.

In request no. 13, plaintiffs asked Schleicher to produce the following:

> [A]ll DOCUMENTS concerning, referring, or relating to the certification of the SUBJECT GLIDER, including the date the aircraft first received its Type Certificate (TC) issued by the FAA and or EASA, as well as early design development, flight tests, application, and relevant correspondence between certification authorities for type certification.

Pls.' Mem. of Law (doc. no. 53-1), at 13-14.  Schleicher initially produced six pages of documents in response to that request, all of which were documents it had produced in response to requests 5, 6, and/or 18, and it promised additional production once a protective order was in place.  See id. at 14.

In request no. 16, plaintiffs asked Schleicher to produce
the following:

> [A]ll documents concerning, referring, or relating to
> the design, manufacture, testing and any modifications
> to the design or manufacturing process for the SUBJECT
> GLIDER.

Pls.' Mem. of Law (doc. no. 53-1), at 14.  Schleicher initially
produced fifty-seven pages of documents in response to that
request, all of which were documents it had produced in response
to requests 5, 6, 13, and/or 18, and it promised additional
production once a protective order was in place.  See id. at 15.

In request no. 19, plaintiffs asked Schleicher to produce
the following:

> [A]ll DOCUMENTS [that] concern, relate [to], refer
> [to] or otherwise describe the design, testing, blue
> prints, manufacturing, manufacturing process,
> distribution, modifications, operation, qualities,
> characteristics, capabilities, capacities,
> maintenance, overhaul, of SUBJECT GLIDER, and each of
> its component parts.

Pls.' Mem. of Law (doc. no. 53-1), at 15.  Schleicher initially
produced sixty-five pages of documents in response to that
request, all of which were documents it had produced in response
to requests 5, 6, 13, 16, and/or 18, and it promised additional
production once a protective order was in place.  See id. at 16.

With respect to  requests 13, 16, and 19, plaintiffs say
that they "agreed to limit their request[s] to flight test
documentation and asked for all 'notes, data, reports, logs,

video, memoranda, e-mail, etc.' relating to flight testing of the ASW 27, ASW 27E and ASG 29 model gliders." Pls.' Mem. of Law (doc. no. 53-1), at 13.  They concede that Schleicher has produced some but not all of the certification documents, but complain that Schleicher has produced no flight-test documents. Schleicher responds by: (1) contending that the certification documentation it provided on the ASG 29 and ASG 29 E models includes information on flight testing; (2) pointing out seven pages of additional documents it produced after entry of the protective order, which it characterizes as information concerning flight testing, see Def.'s Mem. of Law, Ex. 4 (doc. no. 55-5); and (3) claiming that it has not retained any flight-test documents other than those it has already produced.

Because Schleicher has not renewed its objections to requests 13, 16, and 19, its argument, in conjunction with the Kremer declaration, carries the day.  There is nothing left for Schleicher to produce.  Therefore, as to requests 13, 16, and 19, plaintiffs' motion to compel is denied.

### Request 25

In request no. 25, plaintiffs asked Schleicher to produce the following:

> [A]ll DOCUMENTS concerning, referring [to], or
> relating to design changes or modifications since

initial design of the SUBJECT PRODUCT, and each of its
component parts.

Pls.' Mem. of Law (doc. no. 53-1), at 17.  Schleicher initially
produced no documents in response to that request, but promised
production once a protective order was in place.  See id.

Plaintiffs' memorandum of law characterizes request no. 25
as "relat[ing] to 'design changes or modifications since initial
design' of the Glider."  Pls.' Mem. of Law (doc. no. 53-1), at
16.  In other words, plaintiffs seem to believe that they
requested documentation concerning "both the ASG 29 and the ASW
27 model Schleicher gliders," id. at 2 n.2.  For the same
reasons that apply to request no. 6, request no. 25 does not
encompass Schleicher's ASW 27 glider.

Plaintiffs say they "agreed . . . to allow Schleicher to
prioritize by providing documents relating to changes or
modifications relating to a limited number of critical parts
including the 'fuselage, spars, pins and bushings (including all
locking mechanisms), wings, flaps, elevator, aileron and rudder
control systems, canopy, rudder, air brakes, engine and
propeller assembly, weight and balance and spin recovery.'"
Pls.' Mem. of Law (doc. no. 53-1), at 16.  They argue that
Schleicher's production is deficient because it includes no
"emails, change orders [or] other correspondence between
engineers."  Id. at 17.  Schleicher responds by: (1) renewing

23

some of its objections;[9] (2) pointing out that it produced a one-page list of technical notes for the ASG 29 E and the ASG 29 that pertain to design changes and modifications, see Def.'s Mem. of Law, Ex. 7 (doc. no. 55-8); (3) indicating that its technical notes are available on its web site; and (4) claiming that it has not retained any of the underlying documents plaintiffs seek.

Again, Schleicher's objections to discovery, in association with its claim to have produced all the responsive documents in its possession, preclude the court from ruling on plaintiffs' motion to compel the production of documents responsive to request no. 25.  So, as with requests 5, 6, and 18, Schleicher

---

[9] Schleicher articulates its renewed objections in the following way:

> Schleicher renews its objection that these Requests are overly broad and unduly burdensome. Plaintiffs' assertion that they are seeking responsive documents for a "limited number of critical parts" is untrue.  As noted above, Plaintiffs' long list of parts essentially comprises the entire glider. Schleicher further renews its objection that these Requests seek information that is not relevant and/or reasonably calculated to lead to the discovery of admissible evidence on the grounds, as also noted above, that they are unlimited in time and many parts of the glider have no relevance whatsoever to Plaintiffs' claims.  Schleicher further objects on the grounds that evidence concerning post-accident design changes or modifications is irrelevant and inadmissible, and not reasonably calculated to lead to the discovery of admissible evidence.

Def.'s Mem. of Law (doc. no. 55-1), at 10-11.

is directed to inform the court whether it is withholding any
documents identified in request no. 25 in reliance upon its
objections to that request.

**Request 27**

In request no. 27, plaintiffs asked Schleicher to produce
the following:

> [A]ll DOCUMENTS concerning, referring [to], or
> relating to, and including all manual revisions
> (including the reasons for the revisions and any
> testing or other data relating to the revisions) for
> the SUBJECT PRODUCT and each of its component parts,
> since its initial design.

Pls.' Mem. of Law (doc. no. 53-1), at 18.  Schleicher initially
produced no documents in response to that request, but promised
production once a protective order was in place.  See id. at 19.

Plaintiffs say that Schleicher has produced no documents
responsive to request no. 27.  While it is not entirely clear,
given the subject matter of request no. 27, it appears that
Schleicher may be renewing some of its objections to that
request.[10]  In addition, Schleicher: (1) contends that the flight
manual and the maintenance manual it provided plaintiffs, see
Def.'s Mem. of Law, Ex. 8 (doc. no. 55-9), contain detailed
records of their revisions; (2) notes that manual revisions are
also available on its web site; (3) points out that it produced

---

[10] Schleicher's objection to request no. 27 is the same as
its objection to request no. 25.  See note 9, supra.

twenty-two pages of supplemental maintenance instructions, <u>see</u> <u>id.</u>, Ex. 9 (doc. no. 55-10); and (4) claims that it has not retained any of the underlying documents plaintiffs seek.

Given the possibility that Schleicher has withheld documents based upon its objections to request no. 27, that request must be addressed in the same way as requests 5, 6, 18, and 25.  Schleicher is directed to inform the court whether it is withholding any documents identified in request no. 27 in reliance upon its objections to that request.

### Request 28

In request no. 28, plaintiffs asked Schleicher to produce the following:

> [A]ll DOCUMENTS concerning referring [to], or relating to, and including all Service Bulletins, Service Information Letters, Malfunction or Defect Reports, Airworthiness Directives, Airworthiness Concern Process, Advisory Circulars or any other document relating to the SUBJECT PRODUCT, and each of its component parts.

Pls.' Mem. of Law (doc. no. 53-1), at 19.  Schleicher initially produced no documents in response to that request, but promised production once a protective order was in place.  <u>See</u> <u>id.</u> at 20.

Plaintiffs' memorandum of law characterizes request no. 28 as seeking "a variety of service and performance related documents relating to the Glider."  Pls.' Mem. of Law (doc. no. 53-1), at 19.  But, for the same reasons that apply to requests

6 and 26, the court construes request 28 in conformance with the definition of "subject product" plaintiffs included in the instructions to their request for production, a definition that covers "all ASW 27-18 E glider[s] A/K/A ASG 29 E series aircraft and all ASG 29 series aircraft," Def.'s Mem. of Law, Ex. 1 (doc. no. 55-2), at 3, but does not encompass Schleicher's ASW 27.

Plaintiffs say that Schleicher has produced nothing in response to request no. 28.  Schleicher responds by: (1) renewing some of its objections;[11] (2) contending that the documents it produced in response to requests 25 and 27 are also responsive to request no. 28; and (3) claiming that the documents it has already produced are the only documents in its possession that are responsive to request no. 28.  As with requests 5, 6, 25, and 27, Schleicher is directed to inform the

--------

[11] In response to plaintiffs' motion to compel responses to requests 28, 29, 30, and 31, Schleicher articulates the following objections:

> Schleicher renews its objections that these Requests, even as limited, are overly broad, unduly burdensome, and/or seek information that is not relevant and/or reasonably calculated to lead to the discovery of admissible evidence.  The requests are unlimited in time, and apply to all parts of the glider even though many parts have no relevance to Plaintiffs' claims.  In addition, Requests Nos. 28 and 31 are broader still, and objectionable, in that the former references any document at any time concerning the glider and the latter references undefined similar products.

Def.'s Mem. of Law (doc. no. 55-1), at 13.

court whether it is withholding any documents identified in request no. 28 in reliance upon its objections to that request.

### Requests 29 & 30

Requests 29 and 30 were directed toward field experience and safety issues, as related to Schleicher's ASW 27-18 E/ASG 29 E glider and its ASG 29 series gliders.  Plaintiffs' memorandum of law characterizes request no. 29 as pertaining to "the aircraft" and request no. 30 as pertaining to "the product." Neither term appears to be defined in plaintiffs' request for production or anywhere else.  Accordingly, the court construes those two requests as written, i.e., as seeking documents relating to "the subject product," which has been conclusively defined to mean "all ASW 27-18 E glider[s] A/K/A ASG 29 E series aircraft and all ASG 29 series aircraft."  Def.'s Mem. of Law, Ex. 1 (doc. no. 55-2), at 3.  In other words, as with requests 6, 25, and 28, requests 29 and 30 do not encompass Schleicher's ASW 27 glider.

In request no. 29, plaintiffs asked Schleicher to produce the following:

> [A]ll DOCUMENTS concerning, referring [to], or relating to correspondence to or from the Federal Aviation Administration, National Transportation Safety Board, EASA and any other governmental entity, or any other entity or PERSON which relates to research, survey, study, examination, reviews,

> inquiry, or analysis of the SUBJECT PRODUCT, and each
> of its component parts.

Pls.' Mem. of Law (doc. no. 53-1), at 20.  Schleicher initially

produced no documents in response to that request, but promised

production once a protective order was in place.  See id. at 21.

In request no. 30, plaintiffs asked Schleicher to produce

the following:

> [A]ll DOCUMENTS concerning, referring [to], or
> relating to any investigation conducted by any person
> or entity which refers to, concerns or relates to the
> SUBJECT PRODUCT.

Pls.' Mem. of Law (doc. no. 53-1), at 21.  Schleicher initially

produced thirty-one pages of documents in response to that

request, two pages of which it had produced in response to

requests 18 and 19, and it promised additional production once a

protective order was in place.  See id. at 22.

Plaintiffs say that Schleicher has produced no documents in

response to requests 29 and 30, and further argue that "[t]he

absence of responsive documents is particularly difficult to

accept in light of the recent crash[es] of seven Schleicher ASW

27 gliders."  Pls.' Mem. of Law (doc. no. 53-1), at 20.

Schleicher responds by: (1) renewing several of its objections;

(2) stating that, with respect to request no. 29, it has

produced all of its correspondence with the European Aviation

Safety Agency; (3) stating that, with respect to request no. 30,

it has produced documents of investigating authorities and
internal e-mails related to the subject accident; and (4)
claiming that the documents it has already produced are the only
documents in its possession that are responsive to requests 29
and 30.  As with requests 5, 6, 25, 27, and 28, Schleicher is
directed to inform the court whether it is withholding any
documents identified in requests 29 or 30 in reliance upon its
objections to those requests.

### Request 31

In request no. 31, plaintiffs asked Schleicher to produce
the following:

> [A]ll DOCUMENTS which concern, refer to or relate to
> all complaints, criticisms, concerns, and grievances,
> which concern, refer, or relate to the SUBJECT PRODUCT
> and each of its component parts, or similar products,
> whether or not made by consumers, including but not
> limited to letters and emails.

Pls.' Mem. of Law (doc. no. 53-1), at 22.  Schleicher initially
produced five pages of documents in response to that request,
all of which were documents it produced in response to requests
18 and 19, and it promised additional production once a
protective order was in place.  See id. at 23.

Plaintiffs' memorandum of law characterizes request no. 31
as seeking documents pertaining to safety-related complaints
about "the product," and mentions "numerous fatal crashes

involving Glider."   Pls.' Mem. of Law (doc. no. 53-1), at 22.
But, for the same reasons that apply to requests 6, 25, 28, 29,
and 30, the court construes request 31 in conformance with the
definition of "subject product" included in the instructions to
plaintiffs' requests for production, a definition that does not
encompass Schleicher's ASW 27.

Plaintiffs say that: (1) the five pages of documents
Schleicher initially produced were mostly e-mails between
Donovan and Schleicher; and (2) despite the glider's history of
fatal crashes, Schleicher has produced nothing more than those
five pages.   Schleicher responds by: (1) renewing some of its
objections; and (2) claiming that the e-mails it has already
produced are the only documents in its possession that are
responsive to request no. 31.   As with requests 5, 6, 25, 27,
28, 29, and 30, Schleicher is directed to inform the court
whether it is withholding any documents identified in request
no. 31 in reliance upon its objections to that request.

### Conclusion

For the reasons detailed above, plaintiffs' motion to
compel is denied in part.   Specifically, the motion is denied as
to requests 2, 13, 16, and 19.   As to the remaining requests
i.e., nos. 5, 6, 18, 25, and 27-31, plaintiffs' motion is held
in abeyance until Schleicher tells the court whether it is

withholding documents identified in any of those requests based upon the objections articulated in its memorandum of law. Schleicher shall have seven days from the date of this order to respond. Based upon Schleicher's response, the court shall determine whether oral argument or a hearing is necessary.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

January 31, 2013

cc:  Phillip S. Bixby, Esq.
     Roy A. Bourgeois, Esq.
     Alisa Brodkowitz, Esq.
     Stephen J. Dibble, Esq.
     Harold J. Friedman, Esq.
     Edward J. Sackman, Esq.
     Andru H. Volinsky, Esq.